# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kathleen M. Scavillo, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2723 C.D. 2015 |
| | : | Submitted: May 20, 2016 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY
SENIOR JUDGE COLINS**                    **FILED:  September 29, 2016**

Kathleen M. Scavillo (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board) holding that she is ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (the Law)[1] because she voluntarily quit her job without a necessitous and compelling reason. We affirm, but on different grounds from those on which the Board based its denial of benefits.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, § 402(b), *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week… [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …." *Id*.

Claimant was employed by Children of America (Employer) as a part-time assistant teacher in its Warminster, Pennsylvania child care facility from July 2009 until August 5, 2015. (Record Item (R. Item) 12, Board Decision and Order Finding of Fact (F.F.) ¶1.) On July 20, 2015, an infant in the room where Claimant worked had four episodes of diarrhea, and Claimant asked Employer to call the child's parent and send the child home. (*Id.* F.F. ¶3; R. Item 8, Referee's Hearing Transcript (H.T.) at 4-5.) The next day, July 21, 2015, the child returned to Employer's facility and continued to have numerous episodes of diarrhea, some of which were sufficiently severe as to require full clothing changes. (R. Item 12, Board Decision and Order F.F. ¶¶4-5; R. Item 8, H.T. at 4-5.) Claimant requested that Employer send the child home, but Employer allowed the child to remain at its facility because the parent had given Employer a doctor's note stating that the child "may return to day care with loose stools." (R. Item 12, Board Decision and Order F.F. ¶¶4, 6 and Discussion at 2; R. Item 8, H.T. at 5-6, 11-12, 15-16 & Employer Ex. 1.)

Claimant gave notice on July 22, 2015 that she was resigning her employment effective August 5, 2015 because she believed that Employer's allowing the child to return while he had diarrhea created a health risk for other children and the staff and that Employer violated its policy on when sick children may return to the facility. (R. Item 12, Board Decision and Order F.F. ¶¶8-9 and Discussion at 2; R. Item 8, H.T. at 4-6, 12; R. Item 3, Service Center Ex. 7, Resignation Letter.) Claimant also complained to Employer that other children were having diarrhea. (R. Item 12, Board Decision and Order F.F. ¶6 and Discussion at 2; R. Item 8, H.T. at 7, 12.) Employer checked its daily records and found other cases of diarrhea, but did not conclude that the other cases of diarrhea

were connected to the child in question. (R. Item 12, Board Decision and Order F.F. ¶7 and Discussion at 2; R. Item 8, H.T. at 12-14, 16-17.)

Claimant applied for unemployment benefits, and on August 25, 2015, the Department of Labor and Industry's Office of Unemployment Compensation Benefits (Department) issued a determination that Claimant was ineligible for benefits because she had voluntarily quit her employment without a necessitous and compelling reason. Claimant appealed, and the Referee conducted a hearing at which Claimant and two Employer representatives, the director of the Warminster child care facility and a supervisor of Employer's Pennsylvania child care facilities, testified.

At the Referee hearing, Claimant testified that Employer, over her objection, allowed an infant who had four diarrhea diapers on July 20, 2015 to come back the next day and remain at the child care facility despite having seven additional instances of diarrhea on the second day and needing five full changes of clothing in those two days. (R. Item 8, H.T. at 4-6.) Claimant testified that she made clear to the director and assistant director of the Warminster child care facility her concerns that allowing the child to remain at the facility created a health risk for the other children and the staff, that they did nothing in response, and that other children began to have diarrhea. (*Id.*, H.T. at 5-7.) Claimant also testified that it was her understanding that Employer's policy required that an infant with three or more instances of diarrhea must be sent home and could not return until he was symptom-free for 24 hours and that Employer was not enforcing its policy. (*Id.*, H.T. at 4-5.) Claimant admitted that she did not attempt to speak to anyone else at Employer who could override the director's decision because she felt that the people in Employer's upper management "do not really

3

take care of their employees" and "don't care what their employees think." (*Id.*, H.T. at 7-8.) Claimant also admitted that she did not ask to be assigned to a different room. (*Id.*, H.T. at 9-10.)

Employer's witnesses did not dispute Claimant's testimony concerning the child's diarrhea or that he was permitted to remain at its facility in that condition. Rather, Employer's witnesses testified that Employer's policy permitted a child to return, even though not symptom-free, if a note from a pediatrician was provided stating that he could return to day care, and introduced in evidence the July 21, 2015 doctor's note on the basis of which it allowed the child to return. (R. Item 8, H.T. at 11-12, 15-16 & Employer Ex. 1.) This doctor's note did not diagnose the cause of the diarrhea or state that it was noninfectious, but merely stated that the child "was evaluated in my office on 7/14/2015 for the following condition(s): Upper respiratory infection teething" and that "He/She may return to school on 7/21/2015. He may return to day care with loose stools." (*Id.*, Employer Ex. 1.) Employer's witnesses admitted that after July 20, 2015, other children were sent home because they had diarrhea. (*Id.*, H.T. at 13-14, 16-17.) Employer's director testified that Claimant would have been assigned to a different room that would not expose her to the child if Claimant had requested, but that "I didn't think to ask her" because Claimant "just was mad that we accepted the child back." (*Id.*, H.T. at 12.) Employer's Pennsylvania child care facilities supervisor testified that Claimant could have contacted her, two other supervisors above her or Employer's human relations department about the decision to permit the child to return with diarrhea. (*Id.*, H.T. at 18.)

On October 1, 2015, the referee issued a decision reversing the Department's determination and holding that Claimant was eligible for benefits

because Employer's failure to address the health and safety concerns that she raised constituted a necessitous and compelling reason for resigning her employment. (R. Item 9, Referee's Decision and Order.) Employer appealed the referee's decision to the Board.

On November 23, 2015, the Board issued a decision making its own findings of fact and stating that "[t]he decision of the Referee is affirmed," but ruling that Claimant was ineligible for benefits under Section 402(b) of the Law. (R. Item 12, Board Decision and Order at 3.) In its decision, the Board found credible Claimant's testimony concerning the severity of the child's diarrhea, found that the child was permitted to return and remain at Employer's facility despite continuing diarrhea, and found that Claimant complained to Employer about the situation. (*Id.* F.F. ¶¶3-6 and Discussion at 2.) The Board, however, also found that Employer's policy permitted an infant with diarrhea to return with a doctor's note even if symptoms continued and that because a doctor's note was provided, permitting the child to return did not violate that policy. (*Id.* F.F. ¶¶2, 4 and Discussion at 2.)[2] The Board held that because Claimant "has not demonstrated how the employer failed to follow its policy," Claimant had not shown a necessitous and compelling reason for leaving her job with Employer.

---

[2] The Board also stated that Employer after checking its records "found no conclusive evidence of illness in the classroom." (R. Item 12, Board Decision and Order at 2.) To the extent that this statement suggests a finding that Employer did not find other cases of diarrhea, it is unsupported by the record, as both Claimant and Employer's witnesses testified that other children were sent home with diarrhea following the child's return to the classroom. (R. Item 8, H.T. at 7, 9, 13-14, 16-17.)

5

(*Id.* Discussion at 2.) Claimant has filed the instant petition for review appealing the Board's order to this Court.[3]

Claimant argues that Employer's allowing a child with severe diarrhea to return and remain at its child care facility where she worked created a risk of infecting her and the other children at the facility and that this safety concern constituted necessitous and compelling circumstances for leaving that employment. A claimant seeking benefits after voluntarily quitting her job has the burden to demonstrate that she had a necessitous and compelling reason for doing so. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013); *Green Tree School v. Unemployment Compensation Board of Review*, 982 A.2d 573, 577 (Pa. Cmwlth. 2009); *Fitzgerald v. Unemployment Compensation Board of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998). To prove a necessitous and compelling reason for leaving employment, the claimant must show circumstances that produced real and substantial pressure to terminate employment and would compel a reasonable person to act in the same manner, and that she acted with ordinary common sense in quitting her job and made a reasonable effort to preserve her employment. *Mathis*, 64 A.3d at 299-300; *Craighead-Jenkins v. Unemployment Compensation Board of Review*, 796 A.2d 1031, 1033 & n.3 (Pa. Cmwlth. 2002); *Fitzgerald*, 714 A.2d at 1129. Whether or not a claimant had a necessitous and compelling cause for leaving employment is a

---

[3] Our review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 297 n.6 (Pa. Cmwlth. 2013).

6

question of law subject to this Court's plenary review. *Mathis*, 64 A.3d at 300; *Fitzgerald*, 714 A.2d at 1129.

Working conditions that subject both the claimant and others to safety hazards can constitute necessitous and compelling reasons for leaving employment. *Green Tree School*, 982 A.2d at 577; *Rapid Pallet v. Unemployment Compensation Board of Review*, 707 A.2d 636, 638-39 (Pa. Cmwlth. 1998); *Fleeger v. Unemployment Compensation Board of Review*, 528 A.2d 264, 267 (Pa. Cmwlth. 1987). The mere fact that the claimant is afraid is not sufficient; the safety risk must be objectively real to constitute a sufficient reason for resigning from one's job. *Green Tree School*, 982 A.2d at 578 (resignation because employer eliminated position at school that claimant viewed as essential to safety was not for necessitous and compelling circumstances where only safety evidence was claimant's personal opinion, claimant had ties to the individual whose position was eliminated, and claimant did not wait to see whether school staffing would be adequate after the change). In contrast, this Court has held that necessitous and compelling reasons for leaving employment exist where the claimant has shown that she raised an objectively legitimate safety concern with her employer and that the employer refused to address that safety issue. *Fitzgerald*, 714 A.2d at 1128-30 (nurse showed necessitous and compelling circumstances for resignation where employer assigned her responsibilities beyond her skills that she believed would endanger patients); *Rapid Pallet*, 707 A.2d at 638-39 (employer's failure to repair unsafe condition of truck was necessitous and compelling circumstances for quitting job); *Fleeger*, 528 A.2d at 267 (directing truck driver to violate federal safety regulations limiting the amount of driving, if proven, "would automatically

7

supply the employee with legitimate safety concerns that would justify leaving such employment").

The facts found by the Board and the undisputed evidence in the record could support a conclusion that there was a genuine safety risk for Claimant and the children in her care. While Employer had a doctor's note, that note stated only that the child could return with "loose stools" and did not state that the child's severe diarrhea was not infectious or attribute it to a non-infectious cause that would not pose a risk of transmitting disease to other children and caregivers. The Board's finding that Employer did not violate its policy does not constitute a determination that Claimant failed to show a genuine safety risk. The issue here is not whether Employer adhered to its policies, but whether Claimant showed a safety hazard that warranted terminating her employment.

However, as noted above, the claimant must also show that she made a reasonable effort to preserve her employment. *Green Tree School*, 982 A.2d at 579; *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1046-47 (Pa. Cmwlth. 2002); *Craighead-Jenkins*, 796 A.2d at 1033. Therefore, even where there is a real and serious safety concern, the claimant must make a reasonable attempt to seek protection from the danger before resigning from her job. *Department of Corrections v. Unemployment Compensation Board of Review*, 547 A.2d 470, 474 (Pa. Cmwlth. 1988); *Iaconelli v. Unemployment Compensation Board of Review*, 423 A.2d 754, 756 (Pa. Cmwlth. 1980); *Mackanic v. Unemployment Compensation Board of Review*, 390 A.2d 884, 886 (Pa. Cmwlth. 1978). If alternative work arrangements are possible that could solve the safety issue, quitting without even exploring such arrangements does not constitute a reasonable attempt to preserve employment and bars the claimant from receiving

8

benefits. *Department of Corrections*, 547 A.2d at 474; *Iaconelli*, 423 A.2d at 756-57; *Mackanic*, 390 A.2d at 886. Likewise, quitting without pursuing channels provided by the employer for complaining about unacceptable working conditions does not satisfy the requirement that the claimant make reasonable efforts to preserve employment. *St. Barnabas, Inc. v. Com., Unemployment Compensation Board of Review*, 525 A.2d 885, 887-88 (Pa. Cmwlth. 1987); *Iaconelli*, 423 A.2d at 756-57 & n.1.

Here, Claimant could not meet her burden of showing that she made reasonable efforts to preserve her employment.[4] Claimant not only did not ask Employer to remove her from exposure to the hazard, she gave Employer no opportunity to offer an accommodation, as she resigned almost immediately. Immediately announcing an intent to resign without making any effort to determine whether the safety hazard can be eliminated does not constitute a reasonable effort to preserve employment. *Green Tree School*, 982 A.2d at 579. Moreover, while Claimant fully brought the problem to the attention of the assistant director and director of the facility, she resigned without attempting to contact Employer's human relations department and the director's superiors to resolve the situation, even though Employer provided those channels of complaint.

Because Claimant failed to show that she made reasonable efforts to preserve her employment, she could not satisfy her burden of showing necessitous

---

[4] Although the Board did not find that Claimant's efforts to preserve her employment were inadequate, this Court may affirm on other grounds where affirmance is required for a reason different from that relied on below. *Sloane v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 786 n.8 (Pa. Cmwlth. 2015); *Kutnyak v. Department of Corrections*, 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000).

9

and compelling circumstances for resigning.  Accordingly, we affirm the Board's denial of benefits.

_____
JAMES GARDNER COLINS, Senior Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Kathleen M. Scavillo,             :
:
           Petitioner         :
:
           v.             : No. 2723 C.D. 2015
:
Unemployment Compensation    :
Board of Review,             :
:
           Respondent     :

# **O R D E R**

AND NOW, this 29th day of September, 2016, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge